IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE SETTLEMENT CORPORATION, : | |
| ALLSTATE LIFE INSURANCE, : | |
| : | CIVIL ACTION |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| UNITED STATES, JASHUAN BAILEY, : | NO. 07-5123 |
| PNC BANK, N.A., and EDWARD DAVIS, : | |
| : | |
| Defendants. : | |

## MEMORANDUM

BUCKWALTER S. J.                                                                                       May 28, 2008

        Currently pending before the Court is the Motion of Allstate Settlement Corporation ("Allstate Settlement") and Allstate Life Insurance Company ("Allstate Life") (collectively "Allstate") for Summary Judgment and the Responses thereto of Defendants United States, PNC Bank, N.A. ("PNC") and Edward Davis. For the following reasons, the Court will grant the motion in its entirety.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

        In March of 1981, Lasheema Bailey, then a minor, and Jashuan Bailey, mother and guardian of Lasheema, initiated a medical malpractice action in the Court of Common Pleas, Philadelphia County, alleging that Lasheema Bailey suffered permanent disability and brain damage as a result of the defendant hospital's improper diagnosis and treatment. (Petition for Citation to Show Cause, Orphan's Court of Philadelphia County, No. 00056 of 1996, ¶ 1

---

[1]. This history was compiled from the facts and exhibits set forth by Allstate in its Motion for Summary Judgment, which are not disputed by any of the other parties.

(hereinafter "Orphan's Court Petition").)  Approximately two months later, Jashuan Bailey filed a "Petition for Approval of Compromise Settlement and Distribution of Proceeds" seeking approval of settlement of the tort action.  (Id. Ex. A.)  On July 13, 1995, the trial court issued a court order approving the settlement, which required for annuities to be purchased as follows:

- $16,000.00 per month, beginning May 1, 1995 and continuing through April 1, 2000, increasing 2% annually;

- $9,280.00 per month, beginning May 1, 2000, increasing 6% annually, and continuing through and including April 1, 2010, and guaranteed for the life of Lasheema Bailey thereafter;

- $8,000.00 per month, beginning May 1, 2000, increasing 4% annually, and continuing through and including April 1, 2040, and guaranteed for the life of Lasheema Bailey thereafter;

(Id. Ex. B.)  Collectively, these payments are known as the "Periodic Payments."  Ultimately, on September 5, 1995, a Settlement Agreement and Release (the "Settlement Agreement"), providing for the Periodic Payments set forth in the trial court's order, was entered into among Jashuan Bailey, as mother and guardian of Lasheema Bailey, the Hospital of the Medical College of Pennsylvania, its insurers Lexington Insurance Company and the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund.  (Pl. Mem. Supp. Mot. Summ. J., Ex. A.)

As set forth in Schedule A of the Settlement Agreement, in the event of Lasheema Bailey's death, any remaining guaranteed Periodic Payments were to be paid, as scheduled, "to Lasheema Bailey's designated beneficiaries."  (Id.)  Pursuant to a "qualified assignment" within

the meaning of Section 130(c) of the Internal Revenue Code,[2] Lexington Insurance Company assigned to Allstate Settlement the obligation to make the Periodic Payments.  (Id. Ex. B.)  In order to fund these payments, Allstate Settlement purchased annuity contracts nos. 90709842, 90709843, 90709844 (the "Annuity") from Allstate Life.  (Id. Ex. C.)  The Annuity identified Lasheema Bailey as the Annuity payee and Jashuan Bailey as the Annuity beneficiary in the event of Lasheema Bailey's death.  (Id.)  The Annuity further provided that the payments would be sent to Lasheema Bailey and Jashuan Bailey's counsel, Raynes, McCarty, Binder, Ross & Mundy, as escrow agent for Lasheema Bailey.  (Id.)

Lasheema Bailey died on September 24, 2002.  According to the terms of the Annuity, Allstate Settlement stopped the Periodic Payments to the guardian of Lasheema Bailey

---

2.   26 U.S.C. § 130(c) states, in relevant part:

> For purposes of this section, the term "qualified assignment" means any assignment of a liability to make periodic payments as damages (whether by suit or agreement) . . .
>
> (1) if the assignee assumes such liability from a person who is a party to the suit or agreement, or the workmen's compensation claim, and
>
> (2) if–
>
> > (A) such periodic payments are fixed and determinable as to amount and time of payment,
> > (B) such periodic payments cannot be accelerated, deferred, increased, or decreased by the recipient of such payments.
> > (C) the assignee's obligation on account of the personal injuries or sickness is no greater than the obligation of the person who assigned the liability, and
> > (D) such periodic payments are excludable from the gross income of the recipient under paragraph (1) or (2) of section 104(a).
>
> The determination for purposes of this chapter of when the recipient is treated as having received any payment with respect to which there has been a qualified assignment shall be made without regard to any provision of such assignment which grants the recipient rights as a creditor greater than those of a general creditor.

26 U.S.C.A. § 130(c) (1997).

and began making them directly to Jashuan Bailey as beneficiary.  (Id.)  On February 27, 2003, letters of administration were granted to Jashuan Bailey and PNC as co-administrators of the Estate of Lasheema Bailey.  Subsequently, on November 4, 2005, PNC sent a letter to notify Allstate Settlement that Lasheema Bailey's father, Edward Davis, had contested the designation of Jashuan Bailey as the sole beneficiary with respect to the remaining Periodic Payments, and that Allstate should suspend the Periodic Payments due to the dispute.  Id.  In light of these events, Allstate suspended the Periodic Payments under annuity contract no. 9070943, as of the payment in the amount of $12,418.74, due on December 1, 2005, and under annuity contract no. 90709844, as of the payment in the amount of $9,733.22, due on February 1, 2006.[3]

On April 3, 2006, Allstate filed a Petition in Philadelphia Orphan's Court seeking an Order directing Defendants Jashuan Bailey, individually and as co-administrator of the Estate of Lasheema Bailey; PNC Bank, as co-administrator of the Estate of Lasheema Bailey; and Edward Davis to (a) put forth therein all claims to the remaining Periodic Payments and (b) discharge Allstate from liability and from further participation in the action.  (Orphan's Court Petition 7.)  The Orphan's Court issued a Citation to be served upon the Defendants, each of whom filed a response to the Petition.  None of the responses asserted any claim against Allstate independent of a claim to the Periodic Payments.

In April of 2006, after the filing of the Orphan's Court Petition, the Internal Revenue Service ("IRS") caused a Notice of Levy to be served upon Allstate Settlement in connection with the Periodic Payments.  (Amended Petition for Citation to Show Cause,

---

3.  Annuity contract no. 90709842 had been completed and fulfilled as of April 1, 2000, and thus is no longer relevant.

Orphan's Court of Philadelphia County No. 00056 of 1996 (hereinafter "Am. Orphans' Court Petition"), Ex. G.) After consulting with the IRS, Allstate filed an Amended Petition for Citation to Show Cause in Orphan's Court, seeking leave to join the United States of America as a party. (Id.) Prior to the Orphan's Court' ruling on the propriety of the Amended Petition, the United States filed a notice of removal. This Court, however, dismissed the removed action without prejudice on July 31, 2006, for lack of jurisdiction, as the United States had yet to be added as a party. Allstate Settlement Corp. v. U.S., No. 07-5123 (E.D. Pa. Aug. 1, 2006). The case was returned to Orphan's Court, which, on November 14, 2007, issued a Citation directing Jashuan Bailey, Edward Davis, PNC Bank and the United States to show cause why the Amended Petition should not be granted. In December of 2007, the United States, upon being officially added as a party, successfully removed the case to this Court.

On March 17, 2008, Allstate filed the current motion for summary judgment seeking dismissal from further participation in this action and from liability in connection therewith, as well as attorneys' fees and costs in the amount of $14,790.00 to be deducted from the suspended Periodic Payments. All defendants, except Jashuan Bailey, have filed answers. Upon consideration of the parties' briefing, the Court now turns to the issues raised in Allstate's motion.

## II.  STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitle do a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "material" only if it might affect the

outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For there to be a "genuine" issue, a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence merely

colorable or not significantly probative, summary judgment should be granted." Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

## III.  DISCUSSION

### A.  Whether Allstate is Entitled to Be Discharged from Liability

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007) (quoting NYLife Distrib., Inc. v. Adherence Group, Inc., 72 F.3d 371, 372 n.1 (3d Cir. 1995). "The plaintiff in an interpleader action is a stakeholder that admits it is liable to one of the claimants, but fears the prospect of multiple liability." Id.  In such an action, the stakeholder may file suit, deposit the property with the court and then withdraw from the proceedings, leaving the competing claimants to litigate between themselves. Id.; see also McGraw-Hill Cos., Inc. v. Estate of Dailey, Civ. A. No. 97-3777, 1998 WL 242597, at *3 (E.D. Pa. May 12, 1998) ("[A]fter a stakeholder deposits disputed funds with the Court, its obligations as stakeholder in an interpleader action are complete, and thus the stakeholder is entitled to be discharged from the litigation."). "The key prerequisite to bringing an action in interpleader is that there be two or more claimants to the fund who are 'adverse' to each other." New Jersey Sports Prods., Inc. v. Don King Prods., Inc.,15 F. Supp.2d 534, 539 (D.N.J. 1998) (citing 7 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1705. at 507-509 (1986 & 1996 supp.)).  This requirement is not met where (a) one of the claims clearly is devoid of substance; (b) one of the claimants is under the control of the stakeholder or has dropped his claim, such that the fear of multiple liability is baseless; or (c)

the claims are not asserted against the same fund, or the stakeholder may be liable to both claimants. Id. (quoting 7 Wright, Miller & Kane § 1705, at 508-09). Finally, "there must exist a limited fund or some specific, identifiable property as to which the claimants and stakeholder need the protection of one lawsuit." Id. (citing 7 Wright, Miller & Kane § 1704, at 506-07).

There are two methods for bringing an interpleader in federal court. The first is the interpleader statute, 28 U.S.C. § 1335, under which subject matter jurisdiction exists if there is "minimal diversity" between two or more adverse claimants, and if the amount in controversy is $500 or more. Metro. Life Ins. Co., 501 F.3d at 275 (citing State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31, 87 S. Ct. 1199 (1967)). Alternatively, a party may rely on the second method of federal interpleader – Federal Rule of Civil Procedure 22[4] -- which requires the plaintiff to "plead and prove an independent basis for subject matter jurisdiction." Id. It is well-established that "federal courts may exercise jurisdiction over interpleader actions that do not state a federal question on the face of a well-pleaded complaint, provided that the stakeholder's right to relief necessarily depends on the resolution of a substantial question of federal law." Commercial Nat'l Bank v. Demos, 18 F.3d 485, 488 (7th Cir. 1994).

This Court unequivocally maintains federal question jurisdiction over this matter pursuant to Fed. R. Civ. P. 22. First, this action seeks injunctive and declaratory relief against

---

4.   Federal Rule of Civil Procedure 22 states, in pertinent part:

>  Persons with claims that may expose a plaintiff to double or multiple liability
>  may be joined as defendants and required to interplead. Joinder for interpleader
>  is proper even though:
>  (A) the claims of the several claimants, or the titles on which their
>  claims depend, lack a common origin or are adverse and independent
>  rather than identical; or
>  (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

FED. R. CIV. P. 22(1) (2007).

the United States. Under 28 U.S.C. § 1442, a civil action or criminal prosecution commenced in a State court against the United States or any agency thereof "may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." Id. at § 1442(a). Second, this case involves a tax lien by the United States Internal Revenue Service. "[M]atters directly affecting the nature or operation of [federal tax] liens are federal questions, regardless of whether the federal statutory scheme specifically deals with them or not." U.S. v. Brosnan, 363 U.S. 237, 240, 80 S. Ct. 1108, 1111 (1960); see also Asbestos Workers Local No. 23 Pension Fund v. U.S., et al., 303 F. Supp. 2d 551, 555-56 (M.D. Pa. 2004) (finding federal question jurisdiction where potential causes of action in an interpleader action arise under the Internal Revenue Code).

Having confirmed our subject matter jurisdiction, the Court now turns to the question of whether an interpleader action is appropriate, thus warranting Allstate's dismissal from the case. As alleged by Allstate, and not challenged by any of the other parties, Allstate claims no interest in the disputed funds and is prepared to pay all of the Periodic Payments, as they come due, into the Court registry. Further, there is no question of fact that conflicting claims to the Periodic Payments exist and that none of the parties asserting those claims seek to impose independent liability against Allstate. Finally, neither Defendants PNC Bank, Jashuan Bailey nor the United States contest Allstate's request for discharge from these proceedings, subject only to Allstate's obligation to comply with any final, non-appealable judgment entered in this action as to the proper payee with respect to the payments at issue.

The sole opposition to Allstate's requested discharge comes from Defendant Edward Davis, who cursorily alleges that Allstate has (1) "failed to ascertain the proper

beneficiaries under their policies of insurance and failed to remit timely payments to the Defendant, Edward Davis" and (2) "failed to allot sufficient monies for the payment of all federal and state taxes on the payments made to the improper beneficiary, Jashuan Bailey." (Davis Response to Allstate Mot. Summ. J. ¶¶ 1-2.)   Mr. Davis's Answer, however, asserts no claim for relief against Allstate.  (Allstate Reply Br., Ex. D.)   Further, Mr. Davis had no involvement in the underlying tort action, the Settlement Agreement or the purchase of the annuities, meaning he had never previously asserted rights as a beneficiary.  At the time Allstate became involved, its sole contractual obligation was to make the payments to the designated beneficiary, Jashuan Bailey.  (Pl. Mem. Supp. Mot. Summ. J. Ex. C.)  Mr. Davis's belated claim to that money does not now undermine the propriety of the interpleader action, which is expressly designed to "provide a forum in which a holder of money admittedly owing to someone and claimed by several parties may have the question of entitlement to the fund settled in one proceeding and be himself discharged from further liability as to the fund."  SMA Life Assur. Co. v. Piller, Civ. A. No. 86-2956, 1986 WL 12937, at *1 (E.D. Pa. 1986) (quoting Massachusetts Mut. Life Ins. Co. v. Central-Penn Nat'l Bank, 362 F. Supp. 1398, 1401 (E.D. Pa. 1973)).  Finally, as Allstate was neither the guardian nor the administrator of Lasheema Bailey's estate, it had no obligation to set aside funds for taxes.  Mr. Davis's unsupported statements to the contrary fail to create any basis on which to keep Allstate in this action.

      In sum, the Court will permit interpleader and discharge Allstate from further participation in this matter and from all liability in connection with the Periodic Payments at issue, subject only to Allstate's obligation to make the Periodic Payments as scheduled and to comply with any final, non-appealable judgment entered in this action as to the proper payee.

B.   **Whether Allstate is Entitled to Attorneys' Fees**

As a corollary to its discharge from this action, Allstate also seeks an award of attorneys' fees and costs in the total amount of $14,790.00.  The Court grants this requested relief.

"The prevailing principle in interpleader actions brought in the federal courts, whether under the interpleader statute or under Fed. R. Civ. P. 22, is that it is within the discretion of the court to award the stakeholder costs, including reasonable attorneys fees, out of the deposited fund."  The Prudential Ins. Co. of Am. v. Richmond, Civ. A. No. 06-525, 2007 WL 1959252, at *4 (D.N.J. Jul. 2, 2007) (citing 3a James Wm. Moore, MOORE'S FEDERAL PRACTICE ¶ 22.16(2)).); see also AIG Life Ins. Co. v. Rafferty, Civ. A. No. 07-3099, 2008 WL 1959697, at *1 (E.D. Pa. May 6, 2008) (decision of whether to award costs and attorneys' fees to stakeholder in an interpleader action is committed to the sound discretion of the court.)  Authority to award a stakeholder costs and fees does not derive from the interpleader statute or the rule, but is an equitable doctrine.  Frontier Ins. Co. v. Mission Carrier, Inc., Civ. A. No. 9-5151, 1992 WL 209299, at *2 (D.N.J. Aug. 24, 1992). "Reasons cited as justification for an award of attorney fees to the stakeholder in an interpleader action include the stakeholder's role in helping the parties to the dispute to a prompt solution and the absence of serious depletion of the interpleaded funds due to the 'minimal work' required to institute this type of action." Steamfitters Local Union No. 420 Welfare Fund v. Belfiglio, Civ. A. No. 90-4536, 1991 WL 15247, at *4 (E.D. Pa. Feb. 6, 1991).

Defendants PNC Bank, the United States and Edward Davis now contend that Allstate is not entitled to attorneys' fees on two grounds.  First, they claim that sovereign

immunity precludes the award of costs and attorneys' fees prior to the payment of the federal tax lien.  The stakeholder of an interpleaded fund is not entitled to attorney's fees to the extent they are payable out of a fund subject to a federal tax lien.  Trinity Holdings, Inc. v. Firestone Bank, Civ. A. No. 92-203, 1994 WL 449258, at *12 (W.D. Pa. May 4, 1994), aff'd, 66 F.3d 313 (3d Cir. 1995); Blue Cross of Western Pennsylvania v. U.S., Civ. A. No. 92-2236, 1993 WL 476203, at *2 (W.D. Pa. Aug. 9, 1993).  The Federal Tax Lien Act of 1966, 26 U.S.C. § 6323 (1987), establishes the priority of a federal tax lien and the exceptions to this priority, leaving no exception for attorneys' fees for interpleader stakeholders.  Pilots Ass'n for Bay and River Delaware v. U.S. Dept. of Treasury, Civ. A. No. 84-393, 1987 WL 18692, at *2 (D. Del. Oct. 21, 1987).  Thus, "'an interpleading plaintiff cannot be awarded costs and attorneys' fees when such an award would diminish the amount available to satisfy a federal tax lien.'"  Id. (quoting Capagna-Turano Bakery, Inc. v. United States, 632 F.2d 39, 41 (7th Cir. 1980)).

Nonetheless, it is equally clear that a stakeholder plaintiff may receive attorneys' fees against a claimant to the extent the award does not diminish the amount recoverable by the United States on its tax lien.  Trinity Holdings, 1994 WL 449258, at *12.  More specifically,

> if the deposited fund exceeds in amount the tax claim asserted by the United States, fees *out of the residue* may be awarded the stakeholder upon his discharge, even though there has been no adjudication of the respective priorities of the other claimants, since there will still be a portion of the fund which is due a party other than the government and is therefore subject to invasion for the benefit of the disinterested stakeholder.

Pilot's Ass'n, 1987 WL 18692, at *2-3 (quoting MOORE'S FEDERAL PRACTICE § 22.16[2] at 22-169) (emphasis added).[5]

In the case at bar, the Annuity calls for the following disputed funds to be paid by Allstate:

- Annuity 90709843 - Monthly payments in the amount of $12,418.74 due beginning December 1, 2005, through and including April 1, 2006; monthly payments in the amount of $13,163.86 due beginning May 1, 2006, increasing 6% every May 1, through and including March 1, 2008; one monthly payment of $13,953.69 due April 1, 2008; and future monthly payments of $14,790.91 due beginning May 1, 2008, increasing 6% every May 1, through and including April 1, 2010.

- Annuity 90709844 - Monthly payments in the amount of $9,733.22 due beginning February 1, 2006, through and including April 1, 2006; monthly payments in the amount of $10,122.55 due beginning May 1, 2006, increasing 4% every May 1, through and including March 1, 2008; one monthly payment of $10,527.45 due on April 1, 2008; and monthly payments of $10,948,55 due beginning May 1, 2008, increasing 4% every May 1, through and including April 1, 2040.

Simple mathematics reveal that the interpleaded fund is well in excess of $8.5 million. The Notice of Levy filed by the IRS, however, indicates that the lien on Lasheema Bailey's estate, with interest and late payment penalties figured to April 30, 2006, is $1,917,347.91. Even

---

5. Indeed, even the cases cited by the United States in support of its argument recognize this principle. Abex Corp. v. Ski's Enterprises, Inc., 748 F.2d 513, 517 (9th Cir. 1984) ("[T]he governmental priority established under the tax lien statutes precludes an award of fees to the plaintiff stakeholder from an interpleader fund when such an award would deplete the fund prior to total satisfaction of the lien."); Millers Mut. Ins. Assoc'n of Illinois v. Wassall, 738 F.2d 302, 303 (8th Cir. 1984) (noting that to the extent an award of attorneys' fees would diminish the amount recovered by the United States under a prior tax lien, the attorneys' fee award is prohibited); Commerce Bancshares, Inc. v. Lenard, Civ. A. No. 93-2081, 1993 WL 500895, at *2 (D. Kan. Nov. 17, 1993) (recognizing that the stakeholder of an interpleaded fund is not entitled to attorneys' fees to the extent they are payable out of part of a fund impressed with a federal tax lien).

including additional interest and late payment penalties onto the tax lien, there is no doubt that a portion of the deposited fund will be distributed to claimants other than the IRS. Given this remainder in excess of Allstate's requested attorney's fees and costs of $14,790.00 – an amount not challenged by any of the Defendants – Allstate's request is not foreclosed by the existence of a federal tax lien.[6]

Defendants' second challenge to Allstate's request for attorneys' fees claims that determining the proper payee of the annuity payments falls squarely in the "ordinary course" of Allstate's business, thereby depriving Allstate of any entitlement to attorneys' fees in connection with this interpleader action. A court may deny fees where the stakeholder interpleaded funds

---

6. Alternatively, Allstate argues that Allstate's right to recoup a fee award from the Periodic Payments takes a super-priority over the federal tax lien, pursuant to 26 U.S.C. § 6323(b)(9). Allstate's argument, however, is misplaced. Section 6323(b)(9) states:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid-    (9) . . . With respect to a
>
> life insurance, endowment, or annuity contract, as against the organization which is the insurer under such contract, at any time-
> -
>
> (A) before such organization had actual notice or knowledge of the existence of such lien;
> (B) after such organization had such notice or knowledge, with respect to advances required to be made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge; or
> (C) after satisfaction of a levy pursuant to section 6332(b), unless and until the Secretary delivers to such organization a notice, executed after the date of such satisfaction, of the existence of such lien.

26 U.S.C.A. § 6323. As argued by the United States, this section only provides "super-priority" protection to insurers for payments made pursuant to certain insurance or annuity contracts. In essence, it eliminates the need for the insurer to check tax liens before making a policy loan. 14 MERTENS LAW OF FEDERAL INCOME TAX'N § 54A:60. This section does not speak to attorneys' fees recoverable in connection with an interpleader action to settle claims to those insurance payments.

simply to "free itself from ongoing litigation or the vexation of multiple lawsuits." Prudential, 2007 WL 1959252 at *4.  Also, "[w]hen the stakeholder has used the court to aid it in making a decision which is an ordinary one in the course of the stakeholder's business, an award of attorneys' fees is not appropriate in the circumstances." AIG Life, 2008 WL 1959697, at *1 (quoting Fidelity Bank v. Commonwealth Marine and Gen. Assur. Co., 592 F. Supp. 513, 526 (E.D. Pa. 1984)).  "Such an award would constitute a shifting of some of the stakeholder's ordinary business expenses to the claimants." Fidelity Bank, 592 F. Supp. at 526.  In such cases, courts have denied an award of attorneys' fees. See, e.g., AIG Life, 2008 WL 1959697, at *1 (denying attorneys' fees where stakeholder was insurer faced with competing claims to life insurance benefits, since "[i]nsurance companies must routinely determine the appropriate recipient in cases involving multiple claimants to insurance benefits."); SMA Life Assur. Co. v. Pillar, Civ. A. No. 86-2959, 1986 WL 12937, at *2 (E.D. Pa. Nov. 13, 1986) (holding that, in an interpleader action to determine the beneficiary of a life insurance policy issued by plaintiff, plaintiff was not entitled to attorneys fees because the issues involved a "typical claim in the course of the plaintiff's business.").

   Under the circumstances of this particular case, however, the determination of who was entitled to the annuity payments did not fall squarely within the "ordinary course" of Allstate's business.  Allstate Settlement was assigned payment obligations, pursuant to a "qualified assignment," following the settlement of the underlying tort action between the Defendant Hospital and its insurance companies on one hand, and Plaintiff Jashuan Bailey, on behalf of Lasheema Bailey, on the other.  (Allstate Mem. Supp. Mot. Summ. J., Ex. A.; Orphan's Court Petition Ex. D.)  Allstate was not the insurer on the action, nor was it required to make any

decisions as to proper payees.  Rather, its sole obligation involved purchasing the annuities and making the designated payments, as set forth in the Settlement Agreement, to Lasheema Bailey and, upon her death, to Jashuan Bailey, as the actual named beneficiary of the remaining guaranteed annuity payments.  (Allstate Mem. Supp. Mot. Summ. J., Exs. A, B.)  In 2005, three years after Lasheema Bailey's death, her natural father, Edward Davis, suddenly made claims to the Periodic Payments as a potential intestate heir, thereby causing PNC, as co-administrator of the estate, to request that Allstate stop all payments.  (Id. Ex. D.)  Thereafter, in April of 2006, Allstate was served with a Notice of Levy by the IRS due to unpaid estate taxes.  (Am. Orphan's Court Petition, Ex. G.)  The resolution of such competing claims to the established Periodic Payments clearly did not fall within the scope of Allstate Settlement's ordinary course of business as a qualified assignee.

As mentioned above, Allstate now seeks fees and costs in the amount of $14,790.00.  The Defendants do not challenge the amount of these fees.  Moreover, the Court deems them reasonable in light of the extended procedural background of this interpleader action.  Exercising our discretion to award attorneys' fees and cognizant of the minimal amount of those fees, particularly in light of the service performed by Allstate in consolidating the competing claims, the Court awards Allstate the full amount of its requested attorneys' fees.

## IV.  CONCLUSION

In light of the foregoing, Allstate shall be entitled to be discharged from this action, subject only to its obligation to pay into the Court registry the requisite periodic payments due under the 1981 structured settlement agreement and to its obligation to comply with any final, non-appealable judgment entered in this action as to the proper payee of the Periodic

Payments.  Further, the Court shall exercise its discretion to award to Allstate attorneys' fees and costs in the total amount of $14,790, to be paid out of the portion of the suspended Periodic Payments.

An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE SETTLEMENT CORPORATION,<br>ALLSTATE LIFE INSURANCE, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, JASHUAN BAILEY,<br>PNC BANK, N.A., and EDWARD DAVIS, | : | NO. 07-5123 |
| | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this *28th* day of *May*, 2008, upon consideration of Plaintiffs Allstate Settlement Corporation and Allstate Life Insurance Company's (collectively "Allstate"'s) Motion for Summary Judgment (Docket No. 10), the Response of Defendant United States (Docket No. 13), the Response of Defendant Edward Davis (Docket No. 14), the Response of Defendant PNC Bank, N.A. (Docket No. 15), Allstate's Reply (Docket No. 16), and the Sur-reply of the United States (Docket No. 19), it is hereby **ORDERED** that the Motion is **GRANTED** as follows:

1. Pending the entry of a final (non-appealable) judgment or order directing to whom the subject Periodic Payments are to be made, Allstate Settlement Corporation shall cause Allstate Life Insurance Company to pay into the registry of the Court, when due, the following periodic payments due under the 1981 structured settlement agreement, which are funded by annuity contract nos. 90709843 and 90709844 (collectively, the "Annuity"):

    Annuity No. 90709843
    Monthly payments in the amount of $12,418.74 due beginning December 1, 2005 through and including April 1, 2006; monthly payments in the amount of $13,163.86 due beginning May 1, 2006, increasing 6% every May 1st, through and including March 1, 2008 (which are currently suspended); one

>monthly payment of $13,953.69 due April 1, 2008; and future monthly payments of $14,790.91 due beginning May 1, 2008, increasing 6% every May 1st, though and including April 1, 2010.
>
>Annuity 90709844
>Monthly payments in the amount of $9,733.22 due beginning February 1, 2006 through and including April 1, 2006; monthly payments in the amount of $10,122.55 due beginning May 1, 2006, increasing 4% every May 1st, through and including March 1, 2008 (which are currently suspended); one monthly payment of $10,527.45 due on April 1, 2008; and monthly payments of $10,948.55 due beginning May 1, 2008, increasing 4% every May 1st, through and including April 1, 2040.

(Collectively, the "Periodic Payments")

2.  Defendants, the United States; PNC Bank, N.A., as co-administrator of the estate of Lasheema Bailey; Jashuan Bailey; and Edward Davis shall assert in this action any claims as to the proper payee with respect to the Periodic Payments, and are enjoined from commencing any actions or asserting any claims in connection with the subject matter of this action, other than in this action;

3.  Allstate is hereby discharged from further participation in this action and from all liability in connection with, related to, or arising out of the structured settlement at issue, the Annuity, and/or the IRS Levy and any claims between and among the Defendants and the IRS, subject only to Allstate's obligation to comply with any final, non-appealable judgment entered in this action as to the proper payee with respect to the Periodic Payments; and

4.  Allstate is awarded its costs and reasonable attorneys' fees in the amount of $14,790.00, which shall be deducted from the suspended Periodic Payments.

It is so **ORDERED**.

                BY THE COURT:

                *s/ Ronald L. Buckwalter*
                RONALD L. BUCKWALTER, S.J.